```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
   WILLIAM CABRERA GALDAMEZ,                                   :
                                                               :
                                       Petitioner,             :    22 Civ. 9847 (LGS)
                                                               :
                 -against-                                     :    OPINION AND ORDER
                                                               :
   ALEJANDRO MAYORKAS, et al.,                                 :
                                                               :
                                       Respondents.            :
-------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Petitioner William Cabrera Galdamez seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his prolonged detention in Immigration and Customs Enforcement ("ICE") custody without a bond hearing (the "Petition"). Petitioner seeks a writ ordering Respondents to release him or, in the alternative, to provide him with a bond hearing at which the Department of Homeland Security ("DHS") bears the burden of showing by clear and convincing evidence that his continued detention is justified. For the reasons below, the Petition is granted in part.

I.   BACKGROUND

   A.   Petitioner's Immigration Proceedings

The relevant facts are largely undisputed. Petitioner is a 39-year-old native and citizen of El Salvador who first unlawfully entered the United States in 2006. On April 4, 2009, Petitioner was convicted of two misdemeanors -- attempted menacing in the second degree, in violation of New York Penal Law § 110 and § 120.14(01), and endangering the welfare of a child, in violation of New York Penal Law § 260.10(01). He was sentenced to four months imprisonment and paid a $250 fine. The conviction arose from an incident where Petitioner, who had been drinking alcohol and was intoxicated, followed a friend and her boyfriend to her home.

On June 23, 2009, ICE placed Petitioner in removal proceedings for being present without lawful admission.  On March 18, 2010, an immigration judge denied Petitioner's application for asylum, withholding of removal and protection under the Convention Against Torture (the "CAT") and ordered Petitioner removed to El Salvador.  Immigration authorities physically removed him from the United States on July 16, 2010.

On June 24, 2021, Petitioner and his family unlawfully entered the United States.  Petitioner was briefly apprehended by Customs and Border Patrol and released with his family as an exercise of discretion.  Petitioner settled with his family in New York City and lived on supervised release for three months without incident.  On August 8, 2021, Petitioner's partner and mother of his then seven-year-old daughter died at a hospital in Queens, New York, due to complications from COVID-19.  A month later, on September 29, 2021, Petitioner attended a routine, scheduled check-in, where ICE reinstated his 2010 removal order and detained him.  Six days later, on October 4, 2021, ICE reviewed Petitioner's custody and determined that he would remain in ICE custody.  Petitioner assigned custody of his seven-year-old daughter to his mother.  His daughter is in separate removal proceedings.

On October 27, 2021, after an asylum officer determined that Petitioner demonstrated a reasonable fear of future prosecution and torture in El Salvador, DHS referred him to an immigration judge for withholding-only proceedings.  *See* 8 CFR § 208.31(e); *see also* § 208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal.").  On December 13, 2021, Petitioner had his first immigration court hearing, and on December 29, 2021, Petitioner filed his application for withholding of removal and CAT protection.

On February 9, 2022, Petitioner appeared before an immigration judge, who denied Petitioner all relief and ordered him removed from the United States to El Salvador.  Petitioner

appealed to the Board of Immigration Appeals (the "BIA") on March 7, 2022.  On September 16, 2022, the BIA remanded the matter to the immigration judge to consider further Petitioner's request for deferral of removal under CAT and to issue a new decision.  On January 6, 2023, an immigration judge denied Petitioner's application upon remand.  Petitioner has until February 6, 2023, to file a notice of appeal.

In the meantime, on December 15, 2021, ICE issued a 90-day post-order custody review decision to continue Petitioner's detention, concluding that Petitioner was a danger to the community and a flight risk because of his unlawful entry into the United States with a subsequent removal order and his 2009 criminal conviction for acting in a manner injurious to a child.  ICE denied Petitioner release on December 28, 2021.

On January 21, 2022, Petitioner filed a release request, asking ICE to release him as a matter of discretion because of extensive emotional and financial difficulties his family has experienced as a result of his detention, the ongoing health risks of the COVID-19 pandemic in confined settings such as the Orange County Correctional Facility, where Petitioner is currently being held, and the fact that Petitioner is not a flight risk nor a danger to the community.  On February 4, 2022, ICE denied the release request.

On May 6, 2022, after completing a 180-day post-order custody review regarding Petitioner's detention, ICE issued a decision to continue detention based on the same considerations of his immigration and criminal history.  ICE served a copy of this decision on Petitioner on May 9, 2022.  On July 17, 2022, after completing a 270-day post-order custody review concerning Petitioner's detention, ICE issued a decision to continue detention, identifying his immigration and criminal history as the basis for the decision.  ICE served a copy of the decision on Petitioner on July 19, 2022.  Most recently, on October 11, 2022, after completing a 360-day post-order custody review concerning Petitioner's detention, ICE issued a decision to continue detention, again

identifying his immigration and criminal history as the basis for the decision. ICE served a copy of that decision on Petitioner on October 13, 2022.

On November 18, 2022, this Petition was filed through counsel. On January 6, 2023, after the Government filed its memorandum of law in opposition to the Petition, an immigration judge denied Petitioner's application upon remand. As of this writing, Petitioner has been in ICE custody approximately sixteen months -- since September 29, 2021 -- without a bond hearing.

### B. Statutory Scheme

Two sections of the Immigration and Nationalization Act (the "INA") authorize detention, 8 U.S.C. § 1226 and § 1231. Section 1231 operates in the post-removal context, while § 1226 is concerned with noncitizens who are not yet subject to an order of removal. Section 1231(a)(1) provides for a "removal period" of ninety days, during which the Attorney General "shall" remove the noncitizen. Section 1231(a)(2) makes clear that detention during that initial period is mandatory. Section 1231(a)(3) contemplates a form of supervised release for noncitizens still present in the United States after the expiration of that removal period. Finally, § 1231(a)(6) states that certain noncitizens, including those deemed inadmissible under 8 U.S.C. § 1182, "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." Section 1182(a)(9) deems noncitizens who have already been ordered removed, like Petitioner, to be "inadmissible." Section 1231(a)(6) places no explicit limitation on how long such detention may last. Separately, § 1231(a)(5) states that illegal reentrants with existing removal orders will have those orders reinstated, are unable to challenge those orders or apply for relief under this chapter, and "shall be removed under the prior order at any time."

In 2001, in the context of two habeas cases, the Supreme Court interpreted § 1231(a)(6). *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court remarked that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" because "[f]reedom from

4

imprisonment . . . lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Id.* at 690.  Accordingly, relying on the canon of constitutional avoidance, the Court read the statute as implicitly limiting "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal . . . ." *Id.* at 689.

In 2015, the Second Circuit read a similar limitation into § 1226(c), which mandates the detention of certain noncitizens and, like the text of § 1231(a)(6), seems to place no limit on that detention's length.  *See Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015).  The court, citing the "presumptively reasonable six-month period of detention" discussed in *Zadvydas* and as a matter of statutory construction, adopted a bright-line rule requiring that any immigrant detained pursuant to § 1226(c) be afforded a bail hearing within six months of the beginning of detention.  *Id.* at 615-16.  In 2018, the Supreme Court held that a Ninth Circuit decision similarly construing § 1226(c) as imposing a six-month limitation on detention was erroneous.  *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  Thereafter, the Supreme Court vacated the Second Circuit's decision in *Lora*.  *See Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

The Supreme Court did not reach the constitutional issue.  *Jennings*, 138 S. Ct. at 851.  Since then, the Circuits have split, with different facts before them, on the issue of whether the Due Process Clause entitles § 1226(a) detainees an additional bond hearing, with the Second Circuit holding in favor of a hearing.  *See Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) (holding that detainee was entitled to a bond hearing once detention under § 1226(a) becomes prolonged); *compare Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (detainee was entitled to a bond hearing), *with Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (holding that due process did not require that detainee be provided a second bond hearing); *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018).

In 2016, the Second Circuit held that a habeas petitioner subject to a final removal order with pending withholding-only proceedings is detained pursuant to § 1226(a), rather than § 1231(a), and was therefore able to request a bond hearing pursuant to 8 C.F.R. § 1236.1(d). *See Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016). In 2021, the Supreme Court reviewed a similar Fourth Circuit case and reached the opposite conclusion, finding that § 1231 applied, effectively overruling *Guerra*. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021).

In 2018, the Third Circuit noted the serious due process issues posed by § 1231(a)(6), but, guided by the canon of constitutional avoidance, ultimately construed the statute as implicitly entitling a noncitizen detainee to a bond hearing after six months pending the resolution of withholding-only proceedings. *See Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018); *accord Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (the only other Circuit to address the issue, reaching a similar conclusion). In 2022, the Supreme Court overruled the Third Circuit and held that, as a matter of statutory interpretation, § 1231(a)(6) does not require the government to provide noncitizen detainees with a bond hearing before an immigration judge after six months, nor does the statute require that the Government bear the burden of proving a risk of flight or danger to the community by clear and convincing evidence. *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827 (2022). The Court expressly declined to rule on the underlying constitutional issue because it had not been reached by the Court of Appeals and remanded for further consideration. *Id.* at 1835.

In sum, a non-citizen subject to a final removal order with pending withholding-only proceedings is detained pursuant to § 1231(a), including the provision that he "may be detained beyond the [90-day] removal period" under § 1231(a)(6). *Guzman Chavez*, 141 S. Ct. at 2280-81. That statute does not require a bond hearing, nor does it hold the Government to a clear and convincing standard of proof. *Arteaga-Martinez*, 142 S. Ct. at 1833. Because a "statute permitting

6

indefinite detention of an alien would raise a serious constitutional problem," "read in light of the Constitution's demands, [§ 1231(a)(6)] limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689-90; *see also Arteaga-Martinez*, 142 S. Ct. at 1832 ("*Jennings* did not overrule or abrogate *Zadvydas*"). It is undecided how much time is "reasonably necessary to bring about . . . removal" in any given case or beyond which detention might necessarily be unconstitutional.

## II.    LEGAL STANDARD

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *accord Dhinsa v. Krueger*, 917 F.3d 70, 79 (2d Cir. 2019). Petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III.    DISCUSSION

Petitioner makes an as-applied challenge to § 1231(a)(6). He argues that his detention -- which is discretionary under the statute -- is unlawful because, now at sixteen months, it has become unreasonably prolonged and has not been accompanied by adequate process, and that he should be immediately released or be afforded a prompt bond hearing before an immigration judge. Specifically, Petitioner brings two claims: (1) that his prolonged mandatory detention without a bond hearing violates the Due Process Clause of the Fifth Amendment under the framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976); and (2) that his prolonged mandatory detention violates § 1231(a)(6) under *Zadvydas* because his removal is not reasonably foreseeable. Petitioner also

7

seeks an order enjoining the government from transferring him outside the jurisdiction of the New York Field Office and the Southern District of New York pending the resolution of this case.

The Government responds that the statute does not provide for a bond hearing, that ICE's existing post-order-custody-review procedures satisfy due process and that, if the immigration judge's decision denying Petitioner's withholding-only claim is upheld on remand, there are no barriers to removing him to El Salvador again, making his removal reasonably foreseeable and avoiding *Zadvydas's* animating concern of potentially permanent detention.

### A. Due Process

The petitioner in *Arteaga-Martinez* argued that "reading § 1231(a)(6) not to require bond hearings when detention becomes prolonged 'raises serious due process concerns.'" *Arteaga-Martinez*, 142 S. Ct. at 1834. The Supreme Court chose not to address the issue and left it for the lower courts to consider in the first instance. *Id.* at 1835. For the reasons below, Petitioner's prolonged detention under § 1231(a)(6) without a bond hearing is unreasonable and violates his right to due process.

Petitioner contends, and the Government does not directly contest, that due process challenges to prolonged immigration detention under § 1231(a)(6) should be evaluated through the framework outlined in *Mathew*s. The *Mathews* balancing test has been applied to prolonged detention under § 1226(a). *See Velasco Lopez*, 978 F.3d at 851 (holding that petitioner was denied due process when he was detained for fifteen months without a bond hearing, and affirming order for an additional § 1226(a) bond hearing with burden on the government); *see also Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies); *Miranda*, 34 F.4th at 358-59; *Hernandez-Lara*, 10 F.4th at 27-28; *O.F.C. v. Decker*, No. 22 Civ. 2255, 2022 WL 4448728, at *9 (S.D.N.Y. Sept. 12, 2022). Given the largely parallel due process concerns at issue in § 1226(a) and § 1231(a)(6), and that both provisions concern immigration detention as a matter of discretion, the

*Mathews* test is appropriate to apply here. *See, e.g.*, *Guerrero-Sanchez*, 905 F.3d at 225 (applying *Mathews* to determine "the specific dictates of due process" for non-citizens detained under § 1231(a)(6)).

"The three *Mathews* factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez*, 978 F.3d at 851 (internal quotation marks omitted). "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action." *Id.* (internal quotation marks omitted).

In applying this test, the Court follows the Second Circuit's analysis in *Velasco Lopez*. There, the Second Circuit applied the *Mathews* test to determine whether the petitioner's prolonged detention under § 1226(a) posed due process concerns. *Id.* The three-part analysis addressed issues substantially similar to those arising out of this Petition, and the Second Circuit concluded that the petitioner's detention violated due process. *Id.* at 855 ("While the Government's interest may have initially outweighed short-term deprivation of [the petitioner's] liberty interests, that balance shifted once his imprisonment became unduly prolonged."). While *Velasco Lopez* was decided in the context of § 1226(a), the Second Circuit's reasoning is applicable here. First, § 1226(a) and § 1231(a)(6), as explained above, are analogous provisions. Both concern immigration detention as a matter of discretion. *See Guerrero-Sanchez*, 905 F.3d at 222 ("We see no substantial distinction between the liberty interests of aliens detained under § 1226(a) and § 1231(a)(6) because regardless of the stage of the proceedings, the same important interest is at stake--freedom from prolonged detention." (cleaned up)). Second, *Velasco Lopez* concerned an as-applied challenge to the

petitioner's prolonged immigration detention, rather than a facial challenge to § 1226(a) specifically. Thus, the analysis below tracks the Second Circuit's reasoning in *Velasco Lopez*, except for discussion of the second *Mathews* factor, which is necessarily fact specific.

The first *Mathews* factor weighs strongly in Petitioner's favor. Here, "the private interest affected by the official action is the most significant liberty interest there is -- the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. In this country, "liberty is the norm and detention is the carefully limited exception." *Id.* (internal quotation marks omitted). Courts have been "careful not to minimize the importance and fundamental nature of the individual's right to liberty" and, in the same vein, "it is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* (cleaned up).

As of the date of this decision, Petitioner has been detained approximately sixteen months, a period significantly longer than the presumptively reasonable period of six months contemplated in *Zadvydas* and radically longer than the "standard" 90-day removal period laid out in § 1231. His detention is not the result of a criminal adjudication. Nevertheless, he has been incarcerated in the Orange County Correctional Facility, subject to punitive conditions largely indistinguishable from criminal confinement. *See id.* at 852 ("The longer the duration of incarceration, the greater the deprivation."). He has been detained in jail, cannot maintain employment, cannot see his family or friends and has had limited to no access to the telephone, internet and email. Under such conditions for a period of sixteen months and counting, Petitioner's private interest at stake is apparent.

The second *Mathews* factor, the risk of an erroneous deprivation of such private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, also weighs in Petitioner's favor. "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process." *Id.* "At this stage in the *Mathews* calculus, the

primary interest is not that of the Government but the interest of the detained individual." *Id.* Here, the procedures underpinning Petitioner's lengthy incarceration increase the risk of error.

Petitioner has been detained for sixteen months without an individualized hearing before an impartial adjudicator. The only review of his continued custody has occurred through non-appealable, internal reviews performed by ICE itself, including three post-order custody reviews that ICE is obligated to conduct for non-citizens detained under §1231(a)(6), as well as a response to a release request that Petitioner submitted to ICE. During these reviews, officials must consider both favorable factors (such as close relatives residing here lawfully) and unfavorable factors (such as flight risk and danger of future criminal activity), and the foreign national has the right to submit evidence, to use an attorney or other representative and, if appropriate, to seek a government-provided translator. 8 C.F.R. §§ 241.4(f)(5), (7), (8)(iii), (h)(2), (i)(3). However, these proceedings suffer from three significant shortcomings. First, the regulations place the burden on Petitioner rather than the Government. *See Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) (noting detained noncitizens "have little ability to collect evidence"); *Hernandez-Lara*, 10 F.4th at 31 ("[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."). Second, the decision is by ICE itself, not an outside arbiter such as an immigration judge. Finally, the regulations do not provide for an in-person hearing, where Petitioner can present his argument, call witnesses and confront the Government's evidence.

Petitioner has provided sufficient evidence that "the Government might find difficult to overcome if it had to demonstrate affirmatively that [Petitioner] poses a risk of flight or danger to the community necessitating his continued detention." *Jimenez v. Decker*, No. 21 Civ. 880, 2021 WL 826752, at *9 (S.D.N.Y. Mar. 3, 2021) (internal quotation marks omitted). Customs and Border Patrol initially determined to release Petitioner to the community in its discretion, and he was attending a routine ICE check-in when he was detained. He has a team of attorneys and a

social worker at the Bronx Defenders who will support him in carrying out his thorough release plan, should he be released, and he would stay with his mother and young daughter in New York City. Petitioner also intends to seek mental health services to address his diagnosed PTSD and cope with the trauma he experienced in El Salvador. While detained, Petitioner obtained a food handling certificate, which will help him in his search for employment outside of detention. Should he appeal his case to the BIA, he would have strong incentives to attend all proceedings and comply with any conditions of release. Against this, the mere fact of his unlawful entry into the United States with a subsequent removal order and his single criminal case from thirteen years ago that resulted in a misdemeanor conviction may not be sufficient to substantiate that Petitioner poses a risk of flight or danger to the community. As such, the risk of erroneous deprivation to Petitioner's private interest under the status quo is significant.

As the period of confinement grows, "so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853. The Government has now detained Petitioner for sixteen months without a bond hearing, and Petitioner's withholding-only proceedings are still pending. While an immigration judge recently denied Petitioner's application on remand, he has until February 6, 2023, to file a notice of appeal. As his first appeal to the BIA took six months between filing notice and receiving a decision to remand, Petitioner will likely remain in detention for at least the next several months and, if his case is remanded again, for much longer. Pending the resolution of those proceedings and any eventual removal, a bond hearing would help mitigate the "risk of error inherent in the truth-finding process." *Id.* at 852.

The Government argues that the regulatory framework, as applied to Petitioner, provides him ample procedural protections to satisfy due process. "In this case, ICE conducted a 90-day post-order custody review and issued a decision on December 15, 2021, that it would continue to

12

detain [Petitioner], concluding that he posed a danger to the community and was a flight risk . . . ICE came to the same conclusions in its subsequent post-order custody reviews." The Government, however, fails to rebut Petitioner's arguments concerning the second *Mathews* factor regarding the value of existing procedural safeguards. Instead, the Government seems to suggest that a *Mathews* balancing test is unwarranted because Petitioner's "§ 1231 detention satisfies due process." The argument is unpersuasive, as it presupposes what the *Mathews* test is meant to determine -- whether Petitioner's prolonged detention raises due process concerns.

The third *Mathews* factor -- the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail -- strongly favors Petitioner. The Government's regulatory interest in continuing to detain Petitioner without a bond hearing is weak because his continued detention is not well-aligned with either fundamental purpose of detention: mitigating flight risk or preventing danger to the community. *See Zadvydas*, 533 U.S. at 690. As explained above, Petitioner has strong incentives to remain in New York City and has a network at the Bronx Defenders who will support him in carrying out his release plan. Nor does Petitioner appear to be a danger to the community, as his only conviction is from 2009, for which he served four months and paid a $250 fine.

Granting Petitioner a bond hearing at which the Government has the burden to justify continued detention promotes both the Government's and the public's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Providing a bond hearing for Petitioner does not undermine the Government's interests. It simply obligates the Government to justify his continued detention.

As noted in *Mathews*, "in striking the appropriate due process balance the final factor to be assessed is the public interest." *Mathews*, 424 U.S. at 347. The public interest considerations include "the administrative burden and other societal costs that would be associated with" the

additional process. *Id.* "When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." *Velasco Lopez*, 978 F.3d at 855. No identifiable public interest is served by the continued detention of Petitioner.

While the Government's interest may have initially outweighed short-term deprivation of Petitioner's liberty interests, "that balance shifted once his imprisonment became unduly prolonged." *Id.* As all three *Mathews* factors weigh in favor of Petitioner, as in *Velasco Lopez*, the Court finds that the Government has denied Petitioner due process by subjecting him to prolonged detention under § 1231(a)(6) without affording him a bond hearing at which the Government must carry the burden by clear and convincing evidence of justifying his detention.

In responding to Petitioner's due process argument, the Government argues that § 1231(a)(6) and its implementing regulations satisfy due process on their face: "Section 1231(a)(6), as implemented by existing regulations, complies with the Fifth Amendment's Due Process Clause." As the Court does not construe Petitioner's application as a facial challenge to § 1231(a)(6), the argument is substantially unresponsive and need not be addressed in resolving this Petition. However, to the extent that the Government suggests Petitioner lacks a colorable due process claim at all, the argument is unpersuasive. The Government cites *Bhaktibhai-Patel v. Garland*, 32 F.4th 180 (2d Cir. 2022), for the proposition that "illegal reentrants lack colorable due process claims in the context of withholding-only decisions" because they "possess no right to be and remain in the United States. They have already been ordered removed." *Id.* at 197 (cleaned up). But the Second Circuit in *Bhaktibhai-Patel* considered judicial review of the agency's decision to grant discretionary relief from removal, not the prolonged detention while such proceedings are pending. *See id.* That Petitioner "has no constitutional right to remain in the United States" misstates the relevant private interest. The Government's implication -- that courts should not

14

review any alleged due process violation that is associated with a withholding-only proceeding -- yields untenable results.

### B. Violation of § 1231(a)(6) under *Zadvydas*

In addition, or in the alternative, Petitioner argues that his prolonged detention violates § 1231(a)(6) under *Zadvydas* because his removal is not reasonably foreseeable. For the reasons below, Petitioner's statutory argument rooted in *Zadvydas* is not convincing.

The Supreme Court has construed the detention provision in § 1231(a)(6) to contain an implicit time limit. *Zadvydas*, 533 U.S. at 682. The Court in *Zadvydas* "observed that the statute's use of the term 'may' introduces some ambiguity and 'does not necessarily suggest unlimited discretion.'" *Arteaga-Martinez*, 142 S. Ct. at 1832. It then held that § 1231(a)(6) "does not permit indefinite detention" and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689; *Arteaga-Martinez*, 142 S. Ct. at 1832. The period reasonably necessary to effect removal is presumptively six months. *Zadvydas*, 533 U.S. at 701; *Arteaga-Martinez*, 142 S. Ct. at 1837 (Breyer, J., concurring). Petitioner has been detained for more than six months after the reinstatement of his removal order and contends that, given his pending immigration proceedings, his removal is not significantly likely in the reasonably foreseeable future.

While months, if not years, of additional detention is significant, the concern animating the Supreme Court's decision in *Zadvydas* was that of indefinite detention. *See Zadvydas*, 533 U.S. at 695 ("Rather, the issue we address is whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States."). Petitioner's removal is reasonably foreseeable, as it depends solely on his decision to appeal. Once his appeal is resolved, he will be either removed or released. *See Portillo v. Decker*, No. 21 Civ. 9506, 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022) ("For obvious reasons, a noncitizen's use

15

of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*."). The lack of any other impediment is illustrated by his prior removal to El Salvador. Accordingly, Petitioner's statutory claim for immediate release is denied.

### C. Procedural Requirements for Petitioner's Bond Hearing

Petitioner argues that, should he be granted a bond hearing, the Government should be required to prove by clear and convincing evidence that his continued detention is justified, and the immigration judge should consider Petitioner's ability to pay a bond and alternative conditions of release when setting a bond. The Court agrees.

A bond hearing must include certain safeguards and meet certain standards for it to provide meaningful due process for an individual subject to prolonged detention. "It is particularly important that the Government be held to the 'clear and convincing' burden of proof in the immigration detention context because civil removal proceedings, unlike criminal proceedings, are 'nonpunitive in purpose and effect.'" *Argueta Anariba v. Shanahan*, No. 16 Civ. 1928, 2017 WL 6397752, at *2 (S.D.N.Y. Dec. 14, 2017). "The overwhelming majority of courts have concluded, post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests." *Joseph v. Decker*, No. 18 Civ. 2640, 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018) (collecting cases) (cleaned up). In *Velasco Lopez*, the Second Circuit agreed that "a clear and convincing standard was appropriate" in the petitioner's new bond hearing because a standard of proof "serves to allocate the risk of error between the litigants and must reflect the relative importance attached to the ultimate decision." *Velasco Lopez*, 978 F.3d at 855-56 (internal quotation marks omitted).

Consideration of alternative conditions of release, as well as Petitioner's ability to pay a bond, is similarly consistent with due process. A bond determination that does not include a

consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.  Courts in this circuit have required immigration judges to consider alternatives to detention while holding constitutionally-adequate bond hearings.  *See, e.g.*, *Coronel v. Decker*, 449 F. Supp. 3d 274, 286 (S.D.N.Y. 2020); *Arana v. Barr*, 451 F. Supp. 3d 271, 276 (S.D.N.Y. 2020); *Graham v. Decker*, No. 20 Civ. 3168, 2020 WL 3317728, at *8 (S.D.N.Y. June 18, 2020).

The Government opposes the procedural requirements and argues that the Court lacks jurisdiction to grant such relief.  The Government cites 8 U.S.C. § 1252(a)(2)(B)(ii), which states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  Because § 1231(a)(6) uses the word "may," it involves discretion.  Therefore, the Government argues, the Court does not have jurisdiction to dictate what factors an immigration judge must consider in a bond hearing.  The argument is unavailing.  Since the above constitutional analysis compels the requirement of a bond hearing, the Government's invocation of 8 U.S.C. § 1252(a)(2)(B)(ii), which specifically permits jurisdiction over challenges to "the extent of the [agency's] authority under the post-removal period detention statute," *Zadvydas*, 533 U.S. at 688, and "constitutional claims and questions of law," *Patel v. Garland*, 142 S. Ct. 1614, 1623 (2022), is inapposite.  Whether the Supreme Court has ruled that these particular considerations are constitutionally required in immigration bond hearings does not change the nature of the inquiry, which is fundamentally constitutional -- a bond hearing required by due process, without proper procedural safeguards, ensures no due process at all.

IV.     **CONCLUSION**

For the foregoing reasons, the Petition is **GRANTED** in part. The Government is ordered to hold a bond hearing in accordance with this decision by February 20, 2023 or release Petitioner on his own recognizance. At that hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight, considering Petitioner's ability to pay for a bond and alternatives to detention. By February 27, 2023, the Government shall file a letter confirming that the bond hearing was held and stating the outcome thereof.

In light of this decision, Petitioner's request to enjoin the Government from transferring him outside the jurisdiction of the New York Field Office and the Southern District of New York pending the resolution of this case is denied as moot.

The Clerk of Court is respectfully directed to enter judgment for Petitioner and to close the case.

Dated:  February 6, 2023
        New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**